UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM C. KUEBLER<br>2426 Garnett Drive<br>Alexandria, VA 22311,<br><br>                *Plaintiff*,<br><br>   v.<br><br>RAY MABUS, Secretary of the Navy<br>2000 Navy Pentagon<br>Washington, D.C. 20350-2000,<br><br>                *Defendant*. | Civil Action No. 1:14-CV-0699 (ESH) |

AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
(Improperly Constituted U.S. Navy Special Selection Board)

**Jurisdiction**

1. This Court has jurisdiction under 10 U.S.C. § 14502(h)(2) and 28 U.S.C. § 1331.

**Acronyms**

CDC ........................................................ Chief Defense Counsel, Office of Military Commissions

Code 10 .................................................................. International and Operational Law Division
                                                           Office of the Judge Advocate General of the Navy

DOD ................................................................................................................ Department of Defense

JAG ............................................................................................................... Judge Advocate General

LCDR .................................................................................................................Lieutenant Commander

OMC ........................................................................................................ Office of Military Commissions

SSB .................................................................................................................... Special Selection Board

**Parties**

2. Plaintiff is an active duty lieutenant commander (LCDR) in the United States Navy Judge Advocate General's Corps, currently assigned as an Assistant Professor at the United States Naval Academy in Annapolis.  Prior to joining the Naval Academy faculty, he served for three years as an international law attorney and staff officer in the International and Operational Law Division of the Office of the Judge Advocate General (JAG) of the Navy (known within the Navy, and referred to here, as "Code 10").  Upon his departure from Code 10 in the summer of 2013, LCDR Kuebler was rated by his reporting senior – a senior Navy Captain – as being in the "top 1 percent" of all LCDRs that officer had observed in his naval career.

3. Defendant is Secretary of the Navy.  Much of his authority over personnel matters is delegated to Juan Garcia, Assistant Secretary of the Navy (Manpower and Reserve Affairs).

**Facts**

4. From 2005 to 2009, LCDR Kuebler served as a defense counsel in the Office of Military Commissions (OMC) in Washington, DC and Guantanamo Bay, Cuba.  According to Vice Admiral Bruce MacDonald, former JAG of the Navy and Convening Authority for Military Commissions, LCDR Kuebler was "hand selected" for the position based on the JAG Corps' confidence in his "professional ability, leadership and litigation skills and personal integrity." As a result of this assignment, he was, in Admiral MacDonald's words, "thrust into an uncertain and highly scrutinized environment . . . in which colleagues, supervisors, lawyers, and jurists outside the military commission process harbored radically divergent views as to the legitimacy of the process and the proper manner in which defense counsel detailed to represent detainees should discharge their professional duties."

5. In February 2007, after completing his assignment as defense counsel for a Saudi detainee who did not desire military representation, LCDR Kuebler was detailed to the military commission case of *United States v. Omar A. Khadr.* Mr. Khadr, a Canadian national, was apprehended at the age of 15, detained at Guantanamo Bay and charged with a number of offenses, including the murder of Army Sergeant First Class Christopher J. Speer in a firefight in Afghanistan in 2002. In June 2007, LCDR Kuebler became Mr. Khadr's lead defense counsel.

6. From June 2007 to October 2009, LCDR Kuebler assembled and led a complex and coordinated defense effort on Mr. Khadr's behalf. That effort included extensive pretrial discovery and motion practice before the military commission in Guantanamo Bay, multiple appellate proceedings before the United States Court of Military Commission Review, habeas corpus litigation in the federal courts, including the Supreme Court of the United States, litigation in the Canadian courts, as well as a coordinated, multi-continent public advocacy effort, highlighting the unique aspects and public policy considerations associated with the case in light of his client's age at the time of his initial detention and status as a child soldier under international law. LCDR Kuebler's advocacy, both inside and beyond the confines of the Guantanamo Bay courtroom, won high praise on fitness reports from his first two supervisors at OMC, as well as international recognition in the form of the British Columbia Civil Liberties Association's Reg Robson Award for the Protection of Civil Liberties and Human Rights. He was also awarded the Meritorious Service Medal by the JAG, Vice Admiral James W. Houck, in recognition of his work as an OMC defense counsel.

7. As the profile of the Khadr case grew, LCDR Kuebler's zealous advocacy earned the ire of military commission prosecutors and other officials associated with the military commission process. Prosecutors personally attacked him for his lawful public comments about

the case. This was part of a larger pattern of personally attacking various military defense counsel who publicly criticized the military commission system. The motives of David J. R. Frakt, an Air Force Reserve Major, civilian law professor, and counsel for Afghani accused Mohamed Jawad, were directly and harshly impugned by OMC prosecutors in military commission filings, including allegations that he was "using" the commissions to get a job at a better law school. Michael D. Mori, a Marine Corps Major serving as counsel for an Australian accused, David M. Hicks, was placed under investigation for his public comments and ultimately threatened with criminal prosecution by the OMC Chief Prosecutor in 2007.

    8. In the late summer of 2008, with the military commission system having completed a grand total of one contested trial, the Department of Defense (DOD) rejected a request from the Chief Defense Counsel (CDC), Army Colonel Steven H. David, to extend in the position, even though Colonel David had only served for one year. Instead, it replaced him with an Air National Guard Colonel. Colonel David has since been appointed to the Supreme Court of Indiana.

    9. At the time of his appointment, the officer who succeeded Colonel David as CDC was under consideration for promotion to Brigadier General. Almost immediately upon relieving Colonel David, he began to discourage public comments and advocacy by defense counsel to the degree that had previously been encouraged, and attempted to exert control over LCDR Kuebler and the Khadr case in ways that were inconsistent with the rules of professional responsibility, a statutory prohibition against unlawful command influence, and Mr. Khadr's right to independent counsel of choice.

    10. The new CDC's actions and LCDR Kuebler's (and Mr. Khadr's) objections thereto led to a protracted conflict in which the CDC attempted to replace LCDR Kuebler (over Mr.

Khadr's objection) with another attorney, a Naval Reserve Commander who had arrived at OMC at about the same time.  Despite LCDR Kuebler's repeated requests, the CDC's supervisor, a DOD Assistant General Counsel, refused to meaningfully intervene and remove the CDC from LCDR Kuebler's rating chain (the superiors who complete various parts of naval fitness reports), a practice contemplated by military commission rules under the circumstances.  (DOD's Office of General Counsel also supervises the prosecution office and is responsible for drafting military commission rules pursuant to the Secretary of Defense's rule-making authority, as well as formulating and/or reviewing government legal positions in connection with military commission litigation and Guantanamo Bay-related litigation more generally.)

11. The armed forces have professional responsibility rules and enforcement procedures

12. LCDR Kuebler filed professional misconduct complaints against both the CDC and the Naval Reserve Commander referred to in ¶ 10 above.

13. Cognizant military professional responsibility authorities found that both complaints were substantiated.

14. The complaint against the CDC (whose selection for promotion to Brigadier General had been announced in April 2009) was pending when he prepared a scathing fitness report on the occasion of LCDR Kuebler's August 2009 detachment from OMC.

15. Because it was adverse, the August 2009 fitness report effectively destroyed LCDR Kuebler's prospects for promotion.

16. Once again, despite LCDR Kuebler's requests, neither the CDC's supervisor nor the supervisor's superior (the DOD General Counsel) intervened, even though the regulations governing the preparation of fitness reports expressly contemplate the disqualification of reporting officers in such circumstances.

17. The August 2009 fitness report was part of LCDR Kuebler's record in March 2010, when the FY2011 Navy JAG Corps Commander Promotion Selection Board met. Under Navy promotion regulations, he was considered "in zone" for selection by that board. Military officer promotions are governed by the provisions of the Defense Officer Personnel Management Act ("DOPMA"). DOPMA establishes what is essentially an "up or out" system for officer promotions. In a given fiscal year, officers come into the "zone" for promotion based on seniority (referred to as being "in zone"). If not selected for promotion, their records will still appear before subsequent promotions boards, but they will be considered "above zone." Above-zone officers are at a disadvantage for promotion.

18. In Navy courts and boards, the senior member is known as the President.

19. The FY2011 board, like all JAG Corps promotion boards in recent memory, was presided over by one of the two JAG Corps admirals. With one exception, all of its members were senior JAG Corps officers. This practice is consistent with the general professional responsibility precept that lawyers should be evaluated by other lawyers.

20. The August 2009 fitness report was likewise part of LCDR Kuebler's record in March 2011, when the FY2012 promotion board met.

21. The FY2012 promotion board was constituted in same fashion as the FY2011 promotion board.

22. Promotion boards consider the service records of officers who are eligible for promotion.

23. Recent fitness reports are especially significant in military and naval promotions.

24. With the August 2009 fitness report in LCDR Kuebler's record, both boards passed him over for promotion to Commander.

25. Upon detachment from OMC, LCDR Kuebler was assigned to The George Washington University Law School, where he completed an LL.M. in International and Comparative Law with highest honors in 2010. Thereafter, he reported to the Pentagon for duty with Code 10, where he consistently earned high ratings from his reporting seniors, served as an "action officer" alongside and performing the same duties as JAG Corps officers who were a pay grade senior to him, and took the lead for the Navy in connection with a number of complex and high-profile legal issues, including targeting of civilians in armed conflict, manning of warships, and detainee policy.

26. While serving at Code 10, LCDR Kuebler sought the removal of the August 2009 fitness report from his record. He made repeated unsuccessful requests of the Board for Correction of Naval Records and the Navy's Bureau of Personnel, which demonstrated the inadequacy of the process for vindicating the rights of defense counsel in situations such as the one he faced.

27. Finally, in December 2011, on the recommendation of Admiral Houck, Assistant Secretary Garcia found that the August 2009 fitness report was unjust, removed it from LCDR Kuebler's record, and ordered that a Special Selection Board (SSB) consider him for remedial promotion to Commander. The unjust fitness report was removed, but it was not replaced by another regular fitness report. Instead, a neutral placeholder document was inserted covering the period from 1 October 2008 to 21 August 2009 (the date of LCDR Kuebler's detachment from OMC). Thus, LCDR Kuebler has a nearly-eleven month gap in his performance record, which would place him at a severe disadvantage if considered alongside other officers by a regular promotion board.

28. SSBs are intended to replicate the proceedings of regular selection boards. Created by Congress as part of DOPMA, the SSB process is the exclusive remedy for officers whose records did not receive proper consideration by regular promotion boards due to administrative error or unfairness. In awarding LCDR Kuebler an SSB, Secretary Garcia effectively acknowledged that LCDR Kuebler's record had been considered by the FY 2011 and FY 2012 promotions boards in an "unfair manner."

29. Naval officers are divided among "competitive categories" and compete for promotion only with officers in their own category.

30. JAG Corps officers are their own competitive category and therefore compete for promotion only with other JAG Corps officers.

31. The SSB met in April 2012.

32. In contrast to regular JAG Corps promotion boards, including the two that had considered LCDR Kuebler's record when it contained the August 2009 fitness report, the five-member SSB consisted of four non-JAG Corps officers and was presided over by a Rear Admiral from the Surface Warfare community. Only one JAG Corps officer sat on the SSB.

33. The SSB did not recommend LCDR Kuebler for promotion.

33. Upon learning the outcome of the SSB, LCDR Kuebler's commanding officer, Assistant JAG Captain Michael Quinn, recommended that he request a second SSB for FY2012 (the other regular promotion board that had been negatively impacted by the August 2009 fitness report).

34. Despite Captain Quinn's positive endorsement based on the "unique circumstances" of the case, the Bureau of Personnel denied LCDR Kuebler's request. The Bureau's stated rationale for denying the request included the claim that LCDR Kuebler had failed to "object" to

the convening of a FY2011 vice FY2012 board, even though LCDR Kuebler did not specifically request an FY2011 board, LCDR Kuebler was not consulted on the decision to convene an FY2011 vice FY2012 board, and LCDR Kuebler was not provided with any meaningful opportunity to provide input on the nature of the board prior the Bureau's issuance of the order convening the FY2011 board.

35. As a result of these actions, including the failure of responsible officials to remove the August 2009 fitness report in a timely manner, LCDR Kuebler was denied fair and lawful consideration for promotion to Commander.

36. In October 2010, Mr. Khadr pleaded guilty pursuant to a pretrial agreement, and was sentenced to be confined for eight years, without credit for time served. He was required to serve at least one year in United States confinement, after which he would be confined in Canada. He was repatriated on September 29, 2012, and is confined in a maximum security prison in Edmonton, Alberta. His military commission case is pending before the United States Court of Military Commission Review.

### First Cause of Action

37. The averments of the preceding paragraphs 1-36 are incorporated herein by reference.

38. The SSB's action was contrary to law, was an abuse of discretion, and reflected material administrative error because the SSB was not constituted in a manner that replicated the composition of the FY2011 Navy JAG Corps Commander Promotion Selection Board, to-wit, with a JAG Corps flag officer as President, a majority of JAG Corps voting members, and no more than one non-JAG Corps voting member.

### Second Cause of Action

39. The averments of the preceding paragraphs 1-38 are incorporated herein by reference.

40. The Bureau of Personnel's denial of LCDR Kuebler's request for a second SSB was contrary to law, was an abuse of discretion, and reflected material administrative error because LCDR Kuebler's commanding officer, Assistant JAG Captain Michael Quinn, recognized the incongruity in the composition of the SSB and recommended that another SSB be empaneled.  In addition, the Bureau's stated rationale for denying the request based on LCDR Kuebler's failure to "object" to an FY2011 board is invalid.

**Prayer for Relief**

Plaintiff prays that a judgment enter—

a. declaring that the proceedings of the SSB were contrary to law and reflected material administrative error;

b. declaring that the denial of the second SSB was contrary to law and reflected material administrative error;

b. remanding the case to defendant in accordance with 10 U.S.C. § 14502(h)(2) with instructions to convene a new SSB constituted in the same manner as the FY2011 Navy JAG Corps Commander Promotion Selection Board, to-wit, with a JAG Corps flag officer as President, a majority of JAG Corps voting members, and no more than one non-JAG Corps voting member, to reconsider LCDR Kuebler for promotion to Commander; and

c. granting such other and further relief as may in the circumstances be just and proper.

| | |
|---|---|
| April 20, 2014 | Respectfully submitted, |

                                  /s/ Adam Scott Kunz
                                Adam Scott Kunz (Bar No. 995233)
                                Drinker Biddle & Reath LLP
                                1500 K Street, NW, Suite 1100
                                Washington, DC 20005
                                Telephone:   (202) 842-8800
                                Facsimile:    (202) 842-8465
                                Email:         adam.kunz@dbr.com

                                *Attorney for Plaintiff*

                                Lawrence J. Fox
                                Drinker Biddle & Reath LLP
                                One Logan Square, Ste. 2000
                                Philadelphia, PA  19103-6996
                                Telephone: (215) 988-2700
                                lawrence.fox@dbr.com

                                *Of Counsel for Plaintiff*